## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **GREEN ACRES BAPTIST CHURCH, INC., GABC EARLY EDUCATION CENTER, AND GABC FOUNDATION,** | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CASE NO: 6:23-cv-00566-JDK** |
| **BROTHERHOOD MUTUAL INSURANCE COMPANY,** | § § § § | |
| **Defendant.** | § | |

## DEFENDANT BROTHERHOOD MUTUAL'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Brotherhood Mutual Insurance Company ("Defendant" or "Brotherhood Mutual") files this Motion for Partial Summary Judgment and respectfully shows the Court as follows:

### I. SUMMARY OF MOTION

This lawsuit arises from a dispute over a property insurance claim involving fourteen of Green Acres Baptist Church, Inc., GABC Early Education Center, and GABC Foundation's (collectively "Green Acres" or Plaintiffs) properties following a hailstorm on or about April 12, 2020. At the time of the alleged loss, Green Acres' property was insured under Brotherhood Mutual insurance policy number 42MLA0427040 with coverage effective from September 1, 2019 to September 1, 2020 (the "Policy"). After Brotherhood Mutual received notice of the claim on September 4, 2020, it investigated and adjusted the loss, ultimately reaching an approved scope with Green Acres' roofing contractor, AVCO Commercial Roofing, LLC ("AVCO"). This approved scope of work included full roof replacements at most of the properties at issue.

Pursuant to this approved scope, AVCO completed repairs to all but one location—the Family Life Center.[1] The approved scope notably did not include amounts to repair metal roofing (which includes numerous copper mansard roofing sections), for which Brotherhood Mutual declined coverage pursuant to the Policy's limitation for metal roofing and metal roof accessories. Brotherhood Mutual issued payments totaling $3,187,268.34 to Green Acres consistent with this approved scope.

Now Green Acres has submitted new repair estimates for all fourteen properties generated by Forensic Building Science, Inc. ("FBS") totaling $6,398,864.29. Green Acres asserts that they are owed the FBS measure of loss, less prior payments issued by Brotherhood Mutual. Green Acres seeks these additional amounts despite testifying that AVCO has completed repairs to all locations except the Family Life Center pursuant to the approved scope, that all amounts owed to AVCO have been paid consistent with Brotherhood Mutual's claim payments totaling nearly $3.2 million, **and that Green Acres owes no additional money to AVCO for the completed work**.

Brotherhood Mutual is entitled to partial summary judgment on several of Green Acres' actual damage components. First, Brotherhood Mutual is entitled to summary judgment on Green Acres' claim for additional code upgrade costs because: (1) coverage for additional code upgrade costs is now time barred pursuant to the Policy; and (2) in any event, additional code upgrade costs were not incurred for the completed work. Second, Green Acres' claims for additional amounts to repair metal roofing components at the properties is excluded pursuant to the Policy's cosmetic damage exclusion. Third, Green Acres cannot recover *any* additional amounts on the completed

---

[1]    On March 29, 2022, AVCO advised that one of its roofers was involved in a fatal accident while conducting repairs to the Family Life Center (Location 0201). The accident was attributed to a failure of roofing materials used in the original construction of the location. The parties dispute the appropriate scope of repairs to correct the defects in the original construction of the location. This dispute does not arise from damages from the hailstorm at issue in this lawsuit.

work, because its recovery is limited to the actual costs to repair or replace its damaged property, which Green Acres admits have been fully paid by Brotherhood Mutual except for the copper roofs and the Family Life Center.[2] Finally, Green Acres is not owed any amounts for general contractor overhead and profit ("GCOP"), as Green Acres did not incur and does not owe AVCO GCOP for any of the completed work, which include numerous roof replacements.

## II. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether Brotherhood Mutual is entitled to partial summary judgment on Green Acres' claim for additional code upgrade costs because: (1) they are now time barred by the Policy's Ordinance or Law Extension Increased Cost of Construction Provision; and (2) in any event, additional code upgrade costs were not incurred for the completed work.

2. Whether Brotherhood Mutual is entitled to partial summary judgment on Green Acres' claim for damages to copper and other metal roofing and rooftop accessories because the Policy's terms for Metal Roofing and Metal Roof Top Accessories preclude Green Acres' claim for coverage for the copper and other metal roofing and metal roof top accessories at the Properties.

3. Whether Brotherhood Mutual is entitled to partial summary judgment on Green Acres' claim for any additional amounts at the properties on which the work is complete, because Green Acres' recovery is limited to the actual costs to repair or replace its damaged property, which Green Acres admits have been fully paid by Brotherhood Mutual except for the copper roofs and the Family Life Center that have not yet been repaired.

4. Whether Brotherhood Mutual is entitled to partial summary judgment on Green Acres' claim for general contractor overhead and profit, where repairs are complete except for copper roofs and the Family Life Center, and Green Acres does not owe AVCO any additional amounts, including GCOP, for the completed work.

---

[2]    Green Acres testified that there were some flat roof repairs at the Worship Center that it believes Brotherhood Mutual has not yet paid, but their corporate representative could not identify at his deposition which roof sections those are.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS.

### A. Claim Adjustment.

This case arises out of a property insurance claim filed by Green Acres involving alleged hail damage to fourteen insured locations in and around Tyler, Texas (the "Properties") on or about April 12, 2020 (the "Storm"). Brotherhood Mutual received notice of the claim on September 4, 2020 and promptly began adjusting the loss. To that end, Brotherhood Mutual retained Team One Adjusting Services, LLC ("Team One") as its independent adjuster. Team One inspected all of the Properties during late September and early October of 2020. During their inspection, Team One identified what it believed was hail damage, but it did not identify any damage to the metal roofing components that decreased the functionality or useful life of these components.[3] Team One also did not identify any dents, dings, or dimples to the covered property that can be seen without aid from either the ground on or near the insured premises or inside or from a balcony of the building supporting the covered property. This same conclusion was reached by all of Brotherhood Mutual's consultants involved in the claim, including Haag Engineering Co. ("Haag"), and Professional Claim Partners ("PCP").[4] In addition, Bradley Plank, P.E., a licensed mechanical & metallurgical engineer, inspected the Properties at issue and concluded that the hail dents to copper and other metal roofing components did not result in any functional damage or decrease the materials' useful life.[5]

---

[3] Ex. 8 at BMIC_03352-62.

[4] Ex. 3.

[5] Ex. 2; Ex. 2A.

As the adjustment progressed, Brotherhood Mutual reached an approved scope of work with Green Acres' contractor, AVCO Commercial Roofing, LLC ("AVCO"), on March 8, 2022.[6] This approved scope did not include metal roofing repairs or GCOP.[7] Green Acres' corporate representative, Eddy Espinosa, confirmed during his October 2, 2024 deposition that AVCO completed repairs to the Properties at issue pursuant to this approved scope.[8] He further identified that the only work that is not yet completed is to the copper roofing and the Family Life Center's roof.[9] Mr. Espinosa further acknowledged that the Green Acres has paid AVCO a little over $3 million representing all amounts invoiced for the work completed to date.[10] This corresponds to the amount of insurance proceeds issued by Brotherhood Mutual to date – $3,187,268.34. Pursuant to the Policy's replacement cost provisions, Green Acres' coverage is limited to the amount actually incurred for repairs.[11] As such, the amounts in the FBS estimate far exceed the amounts that Green Acres may recover under the Policy, except for potentially the copper mansard roofs and Family Life Center roof.

As AVCO completed work at the various Properties, it submitted amounts for depreciation holdback and code upgrade costs incurred to Brotherhood. Per the Policy, the recovery of code upgrade costs requires that the building be "repaired, rebuilt or replaced . . . within two years of

---

[6] Ex. 6; Ex. 7.

[7] Ex. 6 at GABC_04231–59 (Note $0.00 figure in O&P column of estimate).

[8] Ex. 4 Deposition of Eddy Espinosa at Pg. 31. Mr. Espinosa's deposition was taken on October 2, 2024 as such only a rough transcript is currently available. Defendant will supplement with an official copy when available.

[9] Ex. 4 Deposition of Eddy Espinosa at Pg. 30-31.

[10] Ex. 4 at Deposition of Eddy Espinosa at Pg. 21.

[11] Ex. 1 at BMIC_05744.

the date of loss."[12] This coverage is further sub limited to $500,000.[13] Brotherhood Mutual agreed

to extend this deadline to April 12, 2023.[14] As of that deadline, $59,473.72 in payments were

issued under the ordinance or law coverage pursuant to amounts submitted by AVCO. Moreover,

Green Acres does not contend that any further code upgrades or law-and-ordinance costs were

incurred but not yet paid by Brotherhood Mutual.

**B.  The Policy.**

The Policy contains the following language governing recovery of code upgrade costs:

**ORDINANCE OR LAW EXTENSION**
**INCREASED COST OF CONSTRUCTION**

C.  **Increased Cost of Construction – Damaged Portion:** When the **declarations** show that this Coverage Extension applies to a building (designated on the **declarations** as ORD&LAW 3), **we** cover, up to the applicable building(s) **limit** (shown on the **declarations),** the increased cost of construction of the building necessary because of the application of an enforceable ordinance, law or code; provided the building is repaired, rebuilt or replaced:

   1.  within two years of the date of loss;

   2.  of same height and floor area, style and of comparable quality;

   3.  and used for the same occupancy and purpose.

Under this Increased Cost of Construction extension, **we** pay no more than:

   a.  the amount actually spent to repair, rebuild or replace the building, but not more than the amount it would cost to repair or replace the building with similar materials on the same site and used for the same purpose; or

   b.  the **limit** shown on the **declarations** for this Coverage Extension for a building;

whichever is less.

---

[12] Ex. 1 at BMIC_05718-19.

[13] Ex. 1 at BMIC_05685.

[14] Ex. 10.

Coinsurance does not apply. This is an additional amount of insurance.[15]

\* \* \*

The Policy contains the following terms that limit covered "direct physical loss" for the

Properties' metal roofing and metal roof top accessories:

> 16. **Metal Roofing and Metal Roof Top Accessories: We** do not cover loss to metal roofing or metal roof top equipment or accessories, unless there has been:
>
> a. A decrease in functionality of the covered property;
>
> b. A decrease in the useful life of the covered property; or
>
> c. Dents, dings, or dimples to the covered property that can be seen without aid from either the ground on or near the insured premises or inside or from a balcony of the building supporting the covered property.
>
> The term "direct physical loss" shall only mean a., b., or c. when covered property is metal roofing or metal roof top equipment or accessories.[16]

\* \* \*

The Policy contains the following replacement cost coverage provision, which limits Green

Acres' recovery to the amount actually spent to complete repairs:

> 8. **Replacement Cost:** When Replacement Cost (RC) is shown on the **declarations** for covered property, the value is based on replacement cost without any deduction for depreciation.
>
> This replacement cost provision does not apply to: objects of art, rarity or antiquity; property of others; or paragraphs 2-7 above.
>
> The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount **you** spend to repair or replace the damaged or destroyed property.

---

[15] Ex. 1 at BMIC_05718-19.

[16] Ex. 1 at BMIC_05736.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. **You** may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if **you** notify **us** of **your** intent within 180 days after the loss.[17]

\* \* \*

### IV. LEGAL STANDARD

Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," the non-movant must come forward with significant probative evidence showing a triable issue of fact. *Id.* In determining whether summary judgment is appropriate, the evidence and factual inferences drawn therefrom are to be viewed in a light most favorable to the non-movant and all reasonable doubts about the facts should be resolved in favor of the non-movant. *See Boston Old Colony Ins. v. Tiner Assoc. Inc.*, 288 F.3d 222, 227 (5th Cir. 2002).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because the Court exercises diversity subject-matter jurisdiction over these claims, Texas substantive law applies. *See Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) ("[A]s this is a diversity case, interpret the contact at issue under Texas law."). When the precise policy terms at issue in a case have not been interpreted by any Texas court, federal courts will look to the general principles of Texas law regarding the interpretation of insurance contracts. *Lynch Props., Inc. v. Potomac Ins. Co. of Illinois*, 962 F. Supp. 956, 959 (N.D. Tex.

---

[17] Ex. 1 at BMIC_05744.

1996). In addition, after considering opinions of other courts that have construed the disputed terms, federal courts must predict how the Texas Supreme Court would interpret these terms. *Id*. at 959–60 (citing *Benante v. Allstate Ins. Co.,* 477 F.2d 553, 554 (5th Cir. 1973)).

Cases involving the interpretation of insurance contracts are particularly appropriate for summary disposition where, as here, neither party contends that the policy provisions are ambiguous or that the determination of coverage depends on the resolution of disputed facts. *All Metals, Inc. v. Liberty Mut. Fire Ins. Co*., No. 3–09–CV–0846–BD, 2010 WL 3027045, at *2 (N.D. Tex. Jul. 29, 2010) (citing *Principal Health Care of Louisiana v. Lewer Agency, Inc*., 38 F.3d 240, 242 (5th Cir. 1994)).

## V. ARGUMENTS AND AUTHORITIES

Under Texas law, the elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Acad. of Skills & Knowledge, Inc. v. Charter Sch., USA, Inc.*, 260 S.W.3d 529, 536 (Tex. App.—Tyler 2008, pet. denied)*.* To show a breach of the Policy, Green Acres must show that Brotherhood Mutual failed to pay for a covered loss under the Policy. *Buchholz v. Crestbrook Ins. Co.*, No. 1-20-CV-449-RP, 2022 WL 378442, at *5 (W.D. Tex. Feb. 8, 2022), report and recommendation adopted, No. 1:20-CV-449-RP, 2022 WL 1110529 (W.D. Tex. Mar. 10, 2022). Ultimately, it is Plaintiffs' burden to prove that Brotherhood Mutual breached the contract by failing to provide coverage for *covered* damage. *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied) (Texas recognizes "…the basic principle that insureds are entitled to recover only that which is covered under their policy; that for which they paid premiums. It is well established that insureds are not entitled to recover under an insurance policy unless they prove their damage is covered by the policy."). To that end, it is well settled Texas law that the insured

has the initial burden of establishing coverage under the terms of the Policy. *See, e.g., See, e.g., JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex.2010)).

As such, Plaintiffs must provide competent evidence that their claimed damages are covered by the insurance policy, and ultimately have the burden of proving *the extent* of their loss. *See GeoVera Specialty Ins. Co. v. Walker*, No. CV H-20-1361, 2021 WL 5351721, at *3 (S.D. Tex. Aug. 9, 2021); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). *Ayoub v. Chubb Lloyds Ins. Co. of Tex.*, 641 F. App'x 303, 307 (5th Cir. 2016) (citing *Block v. Employers Cas. Co.*, 723 S.W.2d 173, 178 (Tex. App.–San Antonio 1986), *aff'd*, 744 S.W.2d 940 (Tex. 1988)).

### A.   Green Acres is precluded from recovering any additional amounts for code upgrades.

Under the express terms of the Policy, Green Acres is precluded from recovering any additional amounts for code upgrade amounts not incurred on or before April 12, 2023.[18] To recover under the policy's code upgrade coverage for increased cost of construction the building must be actually "repaired, rebuilt or replaced."[19] In addition to requiring Green Acres to actually incur costs to comply with the enforcement of a code or ordinance, the Policy also requires that these costs be incurred within two years from the date of loss—April 12, 2022.[20] This deadline was extended by Brotherhood Mutual adjuster Monica Miller during the adjustment of the claim as a courtesy to Green Acres. Ms. Miller agreed to extend this deadline an additional year to April

---

[18] *See* Ex. 1 at BMIC_05718-19 (costs must be incurred within 2 years of the date of loss).

[19] Ex. 1 at BMIC_05718-19.

[20] Ex. 1 at BMIC_05718-19.

12, 2023.[21] To date, Green Acres has submitted $59,473.72, in code-upgrade-related costs. Brotherhood Mutual has issued payment for these amounts in full. Now, the extended deadline provided by Ms. Miller has expired. Accordingly, Green Acres is precluded from recovering amounts for code upgrade that were not incurred by that date.

Courts reviewing code upgrade claims also find that an insured may not recover code upgrade costs unless and until they actual incur such costs. *Greenspoint Investors, Ltd. v. Travelers Lloyds Ins. Co*., No. H-10-4057, 2015 WL 965730, at *12 (S.D. Tex. Mar. 3, 2015) (citing *Jardine v. Maryland Cas. Co*., Nos. 0–3335 SC, 10–3336 SC, 10–3318 SC, 10–3319 SC, 2011 WL 6778798, at *5 (N.D. Cal. Dec 27, 2011); *City of Elmira v. Selective Ins. Co. of N.Y.*, 83 A.D. 3d 1262, 921 N.Y.S2d 662 (NY App. 2011) (expressly limiting coverage under the Ordinance or Law provision to repaired, rebuilt or constructed property). "Indeed, these provisions cannot reasonably be read to permit '[p]laintiff to receive additional funds to pay for the increased cost of construction when nothing is actually built." *City of Elmira*, 921 N.Y.S2d at 666. In fact, courts hold that insureds "cannot recover for code upgrades which were never performed. To hold otherwise would award [an insured] the kind of windfall payment that is expressly foreclosed by the policy." *Jardine, 2011 WL 6778798, at *5.*

Green Acres has not alleged or provided any evidence of having actually "incurred" the code upgrade costs before the April 12, 2023 deadline. Furthermore, because Green Acres concedes that all the work was performed **for the amounts that Brotherhood Mutual paid**, except the copper roofing and Family Life Center roof.[22] As such code coverage is now foreclosed

---

[21] Ex. 10.

[22] Ex. 4 Deposition of Eddy Espinosa at Pg. 30-31.

as Green Acres is time barred and did not incur these costs. Brotherhood Mutual is entitled summary judgment as to Green Acres' claim for additional code upgrade or law-and-ordinance costs.

### B. The Policy's Metal Roofing and Metal Roof Top Accessories coverage limitation precludes Green Acres' claim for coverage arising from alleged damage to copper and other metal roofing as a matter of law.

The Policy's Metal Roofing and Metal Roof Top Accessories clause precludes coverage for Green Acres' claimed damage to copper and other metal roofing and rooftop accessories. That clause provides that loss to metal roofing or metal roof top equipment or accessories is not "direct physical loss" covered under the Policy unless there has been:

> (1) a decrease in functionality of the covered property;
>
> (2) a decrease in the useful life of the covered property; or
>
> (3) dents, dings, or dimples to the covered property that can be seen without aid from either the ground on or near the insured premises or inside or from a balcony of the building supporting the covered property.[23]

Green Acres lacks evidence to support that its claimed damage to copper or other metal roofing and metal rooftop accessories meets any of these three exceptions.

As discussed above, Brotherhood Mutual and its consultants did not identify any damage to the metal roofing components involving a decrease to the functionality or useful life of these components.[24] Nor did Brotherhood Mutual or its consultants observe any dents, dings, or dimples to the covered property that can be seen without aid from either the ground on or near the insured premises or inside or from a balcony of a building supporting the covered property. Specifically, Bradley Plank, P.E., a licensed mechanical & metallurgical engineer, concluded that the hail dents

---

[23] Ex. 1 at BMIC_05736.

[24] Ex. 2; Ex. 2A; Ex. 3; Ex. 8.

to metal roofing components did not result in any functional damage or decrease useful service life. [25] In coming to this conclusion, Plank performed a detailed engineering examination of the properties and summarized the findings in a report.[26] The report includes a description of Plank's methodology for the site assessment.[27] Ultimately, Plank did not identify any additional damage to the metal roofing components beyond what was already acknowledged by Brotherhood Mutual and its other consultants.

To support their claim for covered damage to the metal roofing, Plaintiffs rely upon the opinions of Thomas J. Irmiter of Forensic Building Science, Inc. and Mark T. Kilgore of Probe Forensic Engineering, LLC.[28] Neither Irmiter nor Kilgore are qualified, however, to render such opinions. In that regard, neither Irmiter nor Kilgore has the requisite education or experience—neither is a metallurgical engineer—to opine on whether the metal roofing components suffered functional damage or sustained a decrease in service life as result of hail impact from the storm at issue. As set forth in Brotherhood Mutual's Motion to Exclude, which is reiterated and fully incorporated herein by reference, Irmiter and Kilgore's opinion that the metal roofing's useful life has been diminished is not reliable, helpful to the jury, or admissible.

In addition, Green Acres has not produced any evidence that the metal roofing components suffered dents, dings, or dimples that could be seen *without aid* from the ground or balcony. Notably, there are no photos in the FBS and Probe engineering report depicting metal roofing components from the ground.[29] The photos that are included are from the rooftop itself and are not

---

[25] Ex. 2; Ex. 2A.

[26] Ex. 2A.

[27] Ex. 2A.

[28] Ex. 11.

[29] *See* Ex. 12 at GABC_004755-4916.

the vantage point contemplated by Policy's language.[30] Thus, these photos are not competent evidence to support a Green Acres' claims because they do not depict the metal roofing components from the vantage points contemplated by the policy. Moreover, even if we were to assume that the photos were taken from an appropriate vantage point, *e.g.*, from the ground or a balcony, these photos still would not constitute competent evidence because they utilize chalk to make any hail impacts visible.[31] These photos therefore do not depict hail damage visible *without aid* as contemplated by the Policy. Nowhere in the FBS and Probe engineering report do Irmiter and Kilgore document dents, dings, or dimples visible without aid to the metal roofing components.[32]

Thus, Plaintiffs cannot point to any reliable and admissible evidence supporting their claim for full replacement of the metal roofing components. As such, Green Acres cannot set forth competent evidence to raise a genuine issue of material fact as to application of the Policy's metal roofing limitation. Because the Policy's metal roofing limitation precludes coverage for the copper and other metal roofing as a matter of law, partial summary judgment is appropriate on this damage component.

C. **Green Acres cannot recover any additional amounts on the completed work, because its recovery is limited to the actual costs to repair or replace its damaged property, which Green Acres admits have been fully paid by Brotherhood Mutual.**

Except for the copper roofing and Family Life Center roof, Green Acres admits that the repair work has been completed.[33] Green Acres' recovery is limited to the amount actually spent

---

[30] Ex. 1 at BMIC_05736.

[31] *See* Ex. 12 at GABC_004755-4916.

[32] *See* Ex. 12.

[33] Green Acres' corporate representative testified on October 2, 2024 that there may also be a portion of the Worship Center roofs that have not yet been paid by Brotherhood Mutual, but he could not identify which those were.

for repairs. Under the Policy's valuation clause plaintiff's claim for replacement cost coverage "payment shall not exceed the amount" that Green Acres actually "spend[s] to repair or replace the damaged or destroyed property."[34] Courts routinely enforce such language and are in agreement that an insured is only entitled to the amount it actually spends to complete repairs to its property.

This recovery rule holds true even if the amount incurred is less than the amount presented in repair estimates. *See Cent. Mut. Ins. Co. v. White Stone Properties, Ltd.,* No. A-12-CA-275-SS, 2014 WL 1092121, at *7 (W.D. Tex. Mar. 19, 2014), aff'd, 596 Fed. Appx. 333 (5th Cir. 2015) ("If the insured party spends less to repair the roof than the estimated replacement cost, the insured is entitled to the amount actually spent.") (internal citations omitted); *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-CV-471, 2014 WL 3974315, at *6 (E.D. Tex. Aug. 5, 2014) ("An insured cannot recover repair or replacement costs in excess of what he or she actually repairs or replaces") (internal citations omitted); *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 932 (N.D. Tex. 2001) (finding that an insured cannot recover repair or replacement costs in excess of what he actually spends on repairs or replacement); *see also Kolls v. Aetna Cas. & Surety Co.*, 378 F. Supp. 392, 400-01 (S.D. Iowa 1974) ("It is clear from … the Replacement Cost endorsement that it is necessary for the insured to repair and replace the property and expend an amount in excess of the actual cash payment before they can recover under the Replacement Cost Endorsement."); *Colorado Cas. Ins. Co. v. Sammons*, 157 P.3d 460, 468 (Wyo. 2007) ("it is the nature of replacement cost insurance that, if an insured spends less for replacement than actual cash value of the loss, he or she is not entitled to replacement cost coverage."); *State Farm Fire & Cas. Co.*

---

[34] Ex. 1 at BMIC_05744.

*v. Patrick*, 647 So.2d 983, 984 (Fla. Dist. Ct. App. 1994) (finding that the insured cannot recover replacement cost proceeds when the insured completed the work for a lesser amount).

Green Acres' corporate representative Eddy Espinosa testified that Green Acres does not owe any additional amounts to AVCO for the work that it has completed to date. Moreover, the scope of repair contemplated in AVCO's estimate includes all properties at issue. And Mr. Espinosa confirmed that AVCO has invoiced Green Acres for all work it has performed pursuant to date.

> Q. Are you aware of any other properties that aren't reflected in these AVCO estimate that [ ] Green Acres is claiming in damages from the lawsuit?
>
> A. Not from this storm.[35]
>
> * * *
>
> Q. Okay. And -- I just -- to clarify my question, I'm just wanting to know the -- the amounts that AVCO invoiced Green Acres, those were amounts that Green Acres had agreed upon with AVCO to do that work; is that right[?]
>
> A. Oh, yeah, that's correct.[36]
>
> * * *
>
> Q. To your knowledge has Green Acres received invoices from AVCO for all the work that has been completed?
>
> A For work that has been completed I believe so. We've -- we've as we've received funds from Brotherhood, we've paid AVCO.[37]
>
> * * *
>
> Q: Are there any amounts that Green Acres still owes AVCO for work that has been performed?

---

[35] Ex. 4 Deposition of Eddy Espinosa at Pg. 31.

[36] Ex. 4 Deposition of Eddy Espinosa at Pg. 48.

[37] Ex. 4 Deposition of Eddy Espinosa at Pg. 46.

A. Not on the work that has been performed already no.[38]

Mr. Espinosa further testified that only two repair items that have not been completed by AVCO:

Q. Does Green Acres have any plans to perform any additional repair work with AVCO on any of the Green Acres properties?

A. Well, beyond what has not been repaired, yes.

Q. And what -- what items does Green Acres still repair?

A. We still have the Family Life Center that if that roof hadn't been fixed. And after the copper roofs.

Q. Anything else?

A. No, not at the moment.[39]

\* \* \*

Other than the copper roofing, Mr. Espinosa identified only one location where work still need to be completed—the Family Life Center. Mr. Espinosa also testified that Green Acres has paid AVCO "a little over 3 million dollars" for the repairs completed by AVCO to date.[40] This figure corresponds to Brotherhood Mutual's total payment to Green Acres of $3,187,268.34. Pursuant to the Policy's replacement cost provisions, Green Acres is limited to the amount actually incurred to complete repairs. Green Acres acknowledges that repairs are complete at all locations except the Family Life Center. Green Acres also admits that it does not owe AVCO any additional sums for the repairs completed at any of the Properties at issue.[41] Accordingly, Green Acres is not entitled to recover any additional amounts for repairs to any of the locations at issue (other than the Family Life Center). **Any such recovery of additional amounts on completed work would**

---

[38] Ex. 4 Deposition of Eddy Espinosa at Pg. 27.

[39] Ex. 4 Deposition of Eddy Espinosa at Pg. 30-31.

[40] Ex. 4 Deposition of Eddy Espinosa at Pg. 21.

[41] Ex. 4 Deposition of Eddy Espinosa at Pg. 27.

be a windfall to Green Acres that the caselaw cited above clearly acknowledges is prohibited. Thus, the summary judgment evidence fails to support additional replacement cost recovery by Green Acres for any of the locations issue (other than potentially the Family Life Center), because the amounts spent by Green Acres to repair these locations matches the amounts paid by Brotherhood Mutual to Green Acres. For this reason, summary judgment should be awarded to Brotherhood Mutual on all amounts respecting properties on which the work is complete.

### D. General contractor overhead and profit is not owed as matter of law.

Green Acres is not entitled to the recovery of any general contractor overhead and profit. Under the policy's valuation clause plaintiff's claim for replacement cost coverage "payment shall not exceed the amount" Green Acres actually "spend[s] to repair or replace the damaged or destroyed property."[42] Accordingly, Green Acres recovery is limited to the amount actually incurred to complete repairs. For the completed work, Green Acres' acknowledgment that it does not owe AVCO any additional amounts exceeding what Brotherhood Mutual has already paid it, is a tacit admission that additional amounts for GCOP will never be owed for the completed work.

Moreover, Green Acres' corporate representative confirmed that neither Green Acres nor AVCO engaged any other entities to perform the roofing work:

> Q. And they have their own [ ] crews to do the work?
>
> A. My understanding is they did, yes.
>
> Q. And that would include roofing work?
>
> A. That's correct.
>
> Q. Did Green Acres hire any contractors to do the repair work for this insurance loss or just Avco?

---

[42] Ex. 1 at BMIC_05744.

A. No, AVCO. We allowed them as the contractor to coordinate all those things and then they would inform us, you know, who they were contracting and how they were working with them.

Q. Do you recall any of the other entities that AVCO advised you they were engaging?

A. Not -- not at this moment, no.[43]

Furthermore, AVCO's invoices to the Green Acres for completed work reflect that they were completed pursuant to approved scope—which did not include GCOP.[44] Because Green Acres did not spend or incur amounts for GCOP for repairs completed to date, it is therefore precluded from recovering these additional amounts pursuant to the Policy's valuation provisions.

For work that remains uncompleted, *i.e.,* the copper roofing or the Family Life Center roof, Green Acres is similarly precluded from recovering GCOP. Under Texas law, GCOP is recoverable only when the cost is reasonably likely to be incurred in repairing or replacing a covered cause of loss. *5 Star Tech I, LP v. Am. Guarantee & Liab. Ins. Co.*, No. EP-18-CV-00037-DCG, 2020 WL 3578328, at *4 (W.D. Tex. Apr. 28, 2020); *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F. Supp. 2d 814, 835 (N.D. Tex. 2010); *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001). Whether actual cash value includes a general contractor's overhead and profit depends on whether the repair is so complex that hiring a general contractor is likely. *Vought*, 729 F. Supp.2d at 835. When determining whether GCOP is owed, Texas courts focus not on whether retaining a general contractor for the repairs is reasonably necessary to perform the repair work, but rather whether retaining a general contractor is reasonably *likely*. *Id.* at 836. Here, the complexity of the job does not necessitate the retention

---

[43] Ex. 4 Deposition of Eddy Espinosa at Pg. 14.

[44] *See* Ex. 9; Ex. 6; Ex. 4, Deposition of Eddy Espinosa at Pg. 48; Ex. 5 (Ex. 5 does not include all invoices from AVCO but is representative of invoices produced in this matter).

of a general contractor to oversee the work. As noted by both Haag[45] and PCP[46], retaining a general contractor for roof repairs following a hailstorms is not typical or industry norm, as it simply is unnecessary given the scope or repairs at issue. Indeed, AVCO completed nearly all repairs pursuant to an approved scope of repair that largely omitted GCOP.[47] Moreover, the summary judgment evidence does not show that AVCO subcontracted the roofing repairs or otherwise acted as a general contractor. As observed by the court in *Vought*, "In the case of home repair, if damage is so severe that a number of different trades would be necessary to complete the repair, a general contractor likely would be necessary. Conversely, if the repair were so simple that it could be completed by one tradesman, no general contractor would be needed." *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD*., 729 F. Supp. 2d 814, 835 (N.D. Tex. 2010).

Here, the undisputed facts show that Green Acres retained AVCO Commercial Roofing to complete roofing repairs at the Properties. Plaintiffs cannot show that they are reasonably likely to incur GCOP for the remaining work – the copper roofing and Family Life Center – because AVCO is a roofer with its own crews who performed similar work on the numerous other properties without charging Green Acres additional amounts exceeding Brotherhood Mutual's insurance payments. The complexity of the relatively minor remaining repairs do not make the retention of a general contractor reasonably likely—as evidenced by AVCO's previous completion with its own crews of materially similar roofing work. Accordingly, Brotherhood Mutual is entitled to summary judgment on Plaintiffs' claim for GCOP.

---

[45] Ex. 9.

[46] Ex. 3.

[47] Brotherhood Mutual actually did pay GCOP supplements on work that AVCO subcontracted and did not perform with its own crews, in an attempt to compromise on this issue.

## VI. CONCLUSION AND PRAYER

For the foregoing reasons, Defendant Brotherhood Mutual Insurance Company respectfully requests that the Court grant this Motion for Partial Summary Judgment in its entirety and award partial summary judgment on: (1) Plaintiffs' claims for additional amounts for code upgrades; (2) Plaintiffs' claims for damages to replace metal roofing and metal roof top accessories; (3) any additional amounts for locations where repairs have been completed (all locations except copper roofing and the Family Life Center); and (4) Plaintiffs' claim for general contractor overhead and profit.

Respectfully submitted,

By: */s/ Eric K. Bowers*
 Eric K. Bowers
 Texas Bar No. 24045538
 ebowers@zellelaw.com
 Austin J. Taylor
 Texas Bar No. 24125862
 ataylor@zellelaw.com

ZELLE LLP
901 Main Street, Suite 4000
Dallas, TX  75202
Telephone:    214-742-3000
Facsimile:    214-760-8994

**ATTORNEYS FOR DEFENDANT
BROTHERHOOD MUTUAL
INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

      This is to certify that on October 7, 2024, a true and correct copy of the foregoing document was delivered to all known counsel of record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE as follows:

      Jeffery L. Raizner
      Texas Bar No. 00784806
      Andrew P. Slania
      Texas Bar No. 24056338
      RAIZNER SLANIA LLP
      2401 Dunlavy Street
      Suite 300
      Houston, Texas 77006
      Phone:  (713) 554-9099
      Fax:      (713) 554-9098
      **ATTORNEYS FOR PLAINTIFFS**

                                */s/ Eric K. Bowers*
                                  Eric K. Bowers