IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GREEN ACRES BAPTIST CHURCH, INC., GABC EARLY EDUCATION CENTER, AND GABC FOUNDATION<br><br>vs.<br><br>BROTHERHOOD MUTUAL INSURANCE COMPANY | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 6:23-cv-566-JDK<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Brotherhood Mutual's Motion to Exclude Opinions of Thomas J. Irmiter and Mark Kilgore (ECF 13). The motion is referred for disposition (ECF 23). Having considered the briefing filed by the parties, the motion is **DENIED**.

### Background

Plaintiffs Green Acres Baptist Church, Inc., GABS Early Education Center, and GABC Foundation filed this lawsuit concerning an insurance dispute. Plaintiffs own and operate property covered by a commercial property insurance policy issued by Defendant Brotherhood Mutual Insurance Company—Policy No. 42MLA0427040—for the policy period September 1, 2019 through September 1, 2020.[1] The property includes multiple buildings on one campus.[2] Plaintiffs allege that their property was struck by a severe wind and hailstorm on or around April 12, 2020,

---

[1] Plaintiffs' Original Complaint & Jury Demand, ECF 1, at *2–3.
[2] *Id*. at *2 ("The Property contains multiple buildings including, but not limited to, church buildings, family life center, youth building, dormitories, cabins, playgrounds, offices, conference center, counseling center, and gymnasium.").

1

causing substantial damage.[3] Plaintiffs submit that they discovered the extent of damage to the property in July 2020 and filed a claim with Defendant. Plaintiffs allege that Defendant failed to promptly, fully and fairly resolve their claim. Plaintiffs assert claims for violations of the Texas Insurance Code (Sections 541 and 542), breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act.

The present motion concerns the testimony of Plaintiffs' retained expert witnesses, Thomas J. Irmiter and Mark Kilgore. Irmiter and Kilgore co-authored a 258-page expert report concerning damage to the property as a result of the April 12, 2020 weather event.[4] Defendant seeks to exclude two specific opinions in the report: "(1) the service/useful life of these metal roofing components has been reduced by hail; and (2) that additional amounts – such as general contractor overhead and profit ("GCOP"), code upgrades and sales tax – are owed on the completed work."[5] Defendant submits that neither Irmiter nor Kilgore is qualified to opine on a decrease in years of service of the metal roofing and their methodology is unreliable."[6] Specifically, Defendant asserts that neither expert is qualified to render an opinion that a reduction in "coating thickness" will reduce the service life to copper or other metal panels impacted by hail, even if qualified their opinion that the service life was reduced is unreliable and too speculative to be helpful to the jury, and their opinions concerning additional amounts for general contractor overhead and profit, code upgrades and sales tax owed on the completed work are misleading and unhelpful to the jury because they are contrary to the policy language.

---

[3] Id. at *3.
[4] Defendant Brotherhood Mutual's Motion to Exclude Opinions of Thomas J. Irmiter and Mark Kilgore, ECF 13-3 (Exhibit 3).
[5] *Id.*, ECF 13, at *2.
[6] *Id*.

## Applicable Law

Pursuant to FED. R. EVID. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Rule 702 is broadly interpreted, and helpfulness to the trier of fact is its "touchstone." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (citing *Friendship Heights Associates v. Koubek*, 785 F.2d 1154, 1159 (4th Cir. 1986)). Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror. *Id*. To be qualified as an expert, the witness "must have knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (internal quotations omitted). "[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

In *Daubert*, the Supreme Court recognized that the trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Court espoused five non-exclusive, flexible factors that may be considered in deciding whether a proposed expert's methodology is scientifically valid or reliable:

> (1) whether the expert's theory can be or has been tested,
> (2) whether the theory has been subject to peer review and publication,
> (3) the known or potential rate of error of the technique or theory when applied,

(4) the existence and maintenance of standards and controls, and
(5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Id*. at 593–95.  The Court should make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93. The *Daubert* factors are not mandatory or exclusive; a court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered.  *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). To be admissible, an expert's opinion must be based on sufficient facts and a reliable methodology.  *Id*.

After a court considers the *Daubert* factors, a court may then consider whether other factors, not mentioned in *Daubert*, are relevant to the case at hand.  *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999).  "The proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc*., 151 F.3d 269, 276 (5th Cir. 1998).

The admissibility of expert witness testimony is left to the discretion of the trial court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999).  A trial court has considerable flexibility in assessing the reliability of expert testimony. *Id*. at 141. Because experts testify on a diverse range of topics, the *Daubert* factors may or may not apply in a specific case and the court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id*. at 141–142 (emphasis in original).

**Analysis**

**A. Qualifications**

Defendant submits that neither Irmiter nor Kilgore is qualified to render an opinion concerning a reduction in service life to cooper or other metal panels as a result of a reduction in "coating thickness." Defendant complains that neither expert has a metallurgical background or education or specialized training, education, or other qualifications related to metallurgical analysis. Plaintiff asserts that their extensive education and experience in construction and engineering qualify them to provide opinions concerning the useful service life of metal roofs that have been damaged by hail.

Plaintiff points to Irmiter's declaration and curriculum vitae documenting over 50 years of experience in construction and the building inspection industry, as well as over 35 years of performing expert work.[7] Irmiter states that "[a]s a contractor, consultant, and building code official, [he has] evaluated over 10000 projects involving wind and hail damage to a commercial property, including SPF, copper and non-copper metal roofs over the past 30 years."[8] The curriculum vitae for Kilgore documents an engineering education that includes a B.S. in Mechanical Engineering, a M.S. in Building Construction Management, a Master of Engineering in Civil Engineering, and Ph.D. in Construction Management, as well as multiple contractor licenses and approximately 17 years of engineering work experience to include work as a professor, structural/civil engineer, construction management and engineering and forensic engineering.[9] Kilgore's total experience in engineering and construction spans over 40 years.[10]

---

[7] Plaintiffs' Response to Defendant's Motion to Exclude the Opinions of Thomas J. Irmiter and Mark Kilgore, ECF 15-2 (Exhibit 2 and 2A).
[8] *Id*. at *2.
[9] *Id*., ECF 15-3 (Exhibit 3).
[10] *Id*., ECF 15-1 (Exhibit 1), at *3.

In their report, Irmiter and Kilgore state that they conducted a three-part damage assessment process consistent with published ASTM standards that are based on the scientific method.[11] Part of their assessment included coating thickness readings taken by a FISCHER DUALSCOPE® FMP20 with an FD13H Probe.[12] They also state that samples were removed by the roofing company and sent to an independent testing company, Element Materials Technology, for metallurgical analysis.[13]

Here, Irmiter and Kilgore collectively have extensive experience in building construction and engineering. Irmiter has specific experience analyzing hail damage to metal roofing. Their report shows that they relied upon metallurgical analysis and findings from an independent testing company. It is not required for an expert's experience and training to precisely match the issues at hand, or even for an expert to be highly qualified to testify on a given issue. *See Equal Employment Opportunity Commission*, 725 F.Supp.3d 644, 663–64 (E.D.Tex. March 25, 2024) (citing, e.g., *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000); *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023)). "Experience alone can provide a sufficient foundation for expert testimony." *Van Winkle*, 82 F.4th at 379. Additionally, "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id*. (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). Plaintiffs have sufficiently shown that Irmiter and Kilgore are qualified to opine on a reduction in service life to cooper or other metal panels as a result of a reduction in "coating thickness."

---

[11] *Id*., ECF 15-1 (Exhibit 1), at *22.
[12] *Id*. at *24.
[13] *Id*. at *36.

### B. Reliability

Defendant also argues that the methodologies of Irmiter and Kilgore are unreliable. Defendant asserts that they only took coating readings at one location, among the many damaged buildings, and only took readings from copper roof panels. Defendant further asserts that the metallurgical report relied on by Irmiter and Kilgore—the Destructive Testing/Metallurgical Analysis conducted by Element—states that there was no coating on the sample. Even if their opinions survive a reliability analysis, Defendant further contends that their conclusion that a reduction in coating at hail impact locations reduced service life of the roofing system is too speculative.

Plaintiffs submit that Defendant misconstrues the Damage Characterization completed by Element Materials Technology ("EMT") which refers to a "coated" side and "copper" side of the sample.[14] Plaintiffs assert that the terms are used simply to differentiate the exterior and interior sides of the samples, even though both sides are actually coated. Irmiter explains in his declaration that "[t]he exterior-facing side (referred to by EMT as the 'copper side') had a thin coating to protect against weathering and corrosion, while the inner side (referred to as the 'coated side' by EMT) had a much thicker industrial coating."[15] Irmiter further describes a rupture reported by EMT on the interior side of the sample with "new, observable corrosion product welling up from the base metal," that "serves as clear evidence of damage that has already occurred, and the roofs will continue to deteriorate if not repaired."[16] The report also explains the deleterious effect of stress on ductile metals, such as factory-coated steel panels.[17] To the extent Defendant complains

---

[14] *Id.*, ECF 15-4, at *4.
[15] *Id.*, ECF 15-2, at *4, ¶ 14.
[16] *Id.*, at *5, ¶ 15.
[17] *Id.*, ECF 15-1, at *202.

that testing was only performed on the copper roofing of one building, Plaintiffs assert that damage to the steel roofs was readily apparent and documented by Irmiter and Kilgore in the report.[18]

In determining reliability, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 590 U.S. at 595. Irmiter and Kilgore expressly state that their assessment was performed consistent with published ASTM standards that are based on the scientific method. There is no evidence that the ASTM standards followed by Irmiter and Kilgore are unreliable. The report adequately documents how they reached the conclusion that "[r]eduction in coating, at tested impact locations, averaged 53% reducing years of service life on this roof system from this one-time event."[19] Analysis of the admissibility of expert testimony is "not intended to serve as a replacement for the adversary system." *Pipitone*, 288 F.3d at 250 (quoting FED. R. CIV. P. 702 advisory committee note). Evaluation of the sufficiency and weight of their testimony will ultimately be resolved by the jury. Defendants will have ample opportunity to expose any perceived deficiencies in their opinions through the use of vigorous cross-examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Defendant also argues that the opinion that a reduction in coating at hail impact locations reduced service life of the roofing system is too speculative to help the trier of fact. Defendant points to opinions offered by Irmiter with a different co-author in a case in the Southern District of Texas that were excluded. In *Tri Investments v. United Fire & Casualty Company*, 2019 WL 13114345, at *7 (S.D.Tex. Nov. 15, 2019), the Court concluded that opinions concerning

---

[18] See, e.g., *Id*. at *125–27; 130–32.
[19] Id. at *199; *see also Id.* at *25 (documenting comparison of coating thickness at hail impact points with baseline to determine average reduction).

premature corrosion and the effect of standing water in indentations lacked a scientific basis because no information was provided concerning, for example, a timeline or rate of corrosion. Also, in *Amphay v. Allstate Vehicle & Prop. Ins. Co.*, 2023 WL 2491285, at *2 (N.D.Tex. Mar. 13, 2023), the Court excluded a speculative opinion that a roof could leak sometime in the future. Defendant has not shown, however, that the opinion offered here is similar to the opinions offered in those cases. Here, the report documents "ruptures, permanent deformation to the metal panels and significant coating loss at the impact locations."[20] The report additionally explains the acceleration of corrosion and deterioration to metal roofs caused by hail impact.[21] The opinion is not too speculative to assist the trier of fact and can be adequately examined during cross-examination.

### C. Opinion on Additional Amounts Owed

Finally, Defendant contends that opinions by Irmiter and Kilgore concerning additional amounts owed for general contractor overhead and profit, code upgrades and sales tax have no probative value because these costs have not yet been incurred by Plaintiffs and the policy limits recovery for replacement costs to the amount actually incurred. In essence, Defendant is arguing that Plaintiffs are not entitled, as a matter of law, to recover these damages. This is not a proper argument concerning whether the opinion is excludable. Instead, the matter is properly considered in Defendant's motion for partial summary judgment.

In sum, Irmiter and Kilgore's opinions are sufficiently reliable and relevant to be helpful to the finder of fact and to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). Their testimony will assist the trier of fact as required by FRE 702. Irmiter and Kilgore are qualified to testify as experts in this case and Plaintiffs have shown their testimony to

---

[20] *Id*.
[21] *Id*. at *202.

be sufficiently reliable as required by *Daubert* and FRE 702. Their opinions are based upon sufficient facts or data, are the product of reliable principles and methods and are the result of applying those principles and methods reliably to the facts of the case. It is therefore

**ORDERED** that Defendant Brotherhood Mutual's Motion to Exclude Opinions of Thomas J. Irmiter and Mark Kilgore (ECF 13) is **DENIED**.

So ORDERED and SIGNED this 10th day of January, 2025.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE