**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |  |
|---|---|---|
| GREEN ACRES BAPTIST CHURCH, INC., GABC EARLY EDUCATION CENTER, and GABC FOUNDATION, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:23-cv-566-JDK |
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | § § § | |
| Defendant. | § § § | |

**MEMORANDUM OPINION AND ORDER**

This is an insurance dispute that resulted in a nuclear verdict in favor of the insured, Green Acres Baptist Church.  Following a hailstorm, Green Acres agreed with its insurance company Brotherhood Mutual on a scope of work to repair hail-damaged property.  Brotherhood paid the full amount—more than $3.1 million—to repair or replace the property according to the policy and the parties' agreed scope of work.  The parties disputed whether certain other property was also covered by the policy.  Green Acres thus filed this lawsuit, arguing that it was entitled to additional coverage.

As explained below, however, Green Acres failed to meet its burden at trial. Green Acres was not entitled to the "replacement cost" of any additional damaged property because Green Acres did not show that it had first repaired or replaced the property as the policy requires.  Indeed, the policy plainly states that "[r]eplacement

1

cost valuation does not apply until the damaged or destroyed property is repaired or replaced." DX-120 at 5744. Nor was Green Acres entitled to the "actual cash value" of any unrepaired property because it failed to present evidence of actual cash values at trial. Instead, Green Acres submitted various estimates (1) to repair property that Brotherhood has already paid to repair and (2) to repair property that Green Acres has not yet repaired. Inexplicably, the jury awarded Green Acres $4.8 million in actual damages and $35 million in punitive damages.

Brotherhood moved for a take-nothing judgment, arguing that Green Acres provided no evidence of contract damages and no evidence to support a punitive award. Docket No. 96. Other post-verdict motions were filed. Following a careful re-examination of the trial record, the Court agrees with Brotherhood and grants the motion for a take-nothing judgment. The Court also conditionally grants Brotherhood's motion for a new trial. Docket No. 97. All other motions are denied.

## I. FACTUAL BACKGROUND

Green Acres Baptist Church, Inc.; GABC Early Education Center; and GABC Foundation (collectively "Green Acres") are three related entities that together own and operate various properties in Smith County, Texas. Docket No. 44-1 at 1. The properties were insured under a commercial property insurance policy, Policy No. 42MLA0427040, issued by Brotherhood Mutual Insurance Company. *Id.*; DX-120. During the policy term, Green Acres's property sustained damage from a wind and hailstorm on April 12, 2020. Docket No. 44-1 at 1; DX-55 at 4230.[1] Most of

---

[1] This opinion cites to the exhibits' BMIC or GABC page numbers.

the damage occurred at Green Acres's main campus in Tyler, specifically the principal Church Building, the Student Center, and the Family Life Center.

Green Acres submitted a claim to Brotherhood on September 4, 2020. Docket No. 44-1; PX-1 at 6268. Shortly thereafter, Brotherhood retained Team One Adjusting Services to inspect the property. On November 22, 2020, Team One submitted a report estimating a total replacement cost of $1,140,621.33 and an actual cash value of $919,180.68. DX-8 at 3362; Trial Tr. 2/210 (describing Team One's estimate as "$1,090,900"). A feature of Green Acres's Tyler campus is the copper mansard roofs lining the edges of several buildings. Although it noticed dents in the copper and metal roofing, Team One found that these dents were not covered by the policy because the dents were not visible from the ground. DX-8 at 3352.

Green Acres retained AVCO Roofing, a local company providing residential and commercial roofing services. DX-21. In August 2021, AVCO estimated that it would cost $5.6 million to repair or replace all covered damaged property. Trial Tr. 2/211:20–25; PX-3 at 2584. AVCO included in its estimate the cost to repair the metal roofs as well as $740,000 in overhead and profit for itself as general contractor. PX-3; DX-41; DX-44. Brotherhood thereafter retained Haag Construction Consulting Co. to coordinate with AVCO and Green Acres regarding the proper scope of repairs. Trial Tr. 1/195:7–8. Haag submitted its own estimate on February 23, 2022, finding that the cost to repair or replace the damaged property was $3,789,723.10. DX-55 at 4259.

On March 7, 2022, Green Acres agreed to Haag's estimate and scope of work. By email, the AVCO representative negotiating with Haag stated: "We have reached out to the church, and we have all discussed and agreed that we are indeed in agreement with your updated scope based on what we know and have identified at this time." DX-56; Trial Tr. 2/229:12–17; *id.* 230:15–16. The agreed scope of work did not include repairing or replacing the metal roofs and did not include the overhead and profit for AVCO. *See* DX-55. Instead, the parties agreed to table these issues and attempt to resolve them later. DX-55; Trial Tr. 2/188:9–12 (Green Acres representative stating "my understanding of [the agreed scope] is that we were trying to get work done on the things that were not disputed").

Following the agreement, AVCO began repairing and replacing the damaged property. Within a few weeks, however, the project halted when an AVCO employee tragically fell through the sloped portion of the Family Life Center roof and died. Trial Tr. 1/225–26. The parties dispute the cause of the roof collapse, but to keep the work moving forward, Brotherhood paid Green Acres more than $68,000 to repair and improve the decking of the Family Life Center. Docket No. 44-1 at 1–2; Trial Tr. 2/192.

AVCO continued repairing and replacing various roofs across Green Acres's numerous properties and submitting invoices to Brotherhood for reimbursement. By the end of 2022, AVCO had finished all the work in the March 2022 scope, Brotherhood had paid for the repairs, and Green Acres owed AVCO nothing further. Trial Tr. 2/195–96.

4

Between the end of 2020 and the start of 2023, Brotherhood made fifteen payments to Green Acres and AVCO:

- December 2, 2020................................................$736,852.03
- December 2, 2020................................................$188,892.55
- March 10, 2021....................................................$584.55
- December 30, 2021.............................................$1,840,263.88
- December 30, 2021.............................................$201,262.31
- March 10, 2022...................................................$30,153.69
- March 31, 2022...................................................$50,785.68
- April 20, 2022.....................................................$12,143.12
- May 10, 2022......................................................$1,904.31
- July 8, 2022 .......................................................$4,109.60
- July 28, 2022 .....................................................$2,133.77
- August 25, 2022.................................................$2,050.00
- September 12, 2022 ...........................................$10,789.28
- November 6, 2022 .............................................$37,184.41
- November 23, 2022............................................$68,159.16.

These payments total $3,187,268.34.  Docket No. 44-1 at 1–2.

Ultimately, Brotherhood, through Haag, denied coverage for the metal roofs and most of AVCO's overhead and profit.  Trial Tr. 2/17:13–15.  Regarding the metal roofs, the policy did not cover damage to metal roofs unless the damage either caused a decrease in the "functionality" or "useful life" of the roof, or the damage was visible from the ground.  DX-120 at 5736 § 16; Trial Tr. 2/263–64; *see also* DX-31.  And Brotherhood believed that none of these requirements had been met here.  Trial Tr. 2/262–64.  Regarding overhead and profit, Brotherhood contended that most of AVCO's services did not qualify as general contracting services entitled to overhead and profit under the policy.  *See* DX-41; DX-55; Trial Tr. 2/17–21.  The parties, moreover, continued to dispute the cost of the upgrades necessary to repair the roof of the Family Life Center where the worker fell.  Trial Tr. 2/191:2–10.  Brotherhood

maintained that the $68,000 it had already paid was sufficient, while Green Acres contended that the cost of upgrades was closer to $500,000. *Id.*; *see also id.* 235:15–19 (AVCO representative contending "$580,000" is needed for the upgrade); DX-102 (Brotherhood's $68,000 estimate).

Green Acres filed this lawsuit. In addition to a claim for breach of the policy, Green Acres alleged that Brotherhood had acted in bad faith in adjusting the claim and had violated the Texas Deceptive Trade Practices Act and Chapter 542 of the Texas Insurance Code. Docket No. 1.

The case went to trial.[2] Rather than presenting evidence on the disputed items identified above, Green Acres claimed that many of the repairs made by AVCO—and paid for by Brotherhood as part of the parties' agreed scope of work—had been "temporary" and that substantial, additional repairs were now necessary. *See, e.g.*, Trial Tr. 2/56, 77, 102. Following four days of testimony, the jury returned a verdict for Green Acres, awarding it $4,838,747.66 on the breach of policy claim (Questions 1–2) and $35 million in punitive damages for breach of the common law duty of good faith and fair dealing (Questions 3–5). Docket No. 77 at 3–4. Although the jury found that Brotherhood knowingly engaged in unfair or deceptive acts or practices causing harm to Green Acres, the jury awarded nothing in damages on this claim (Questions

---

[2] The Court denied Brotherhood's motion for partial summary judgment because of several material fact disputes. Docket Nos. 49; 63. Specifically, the parties presented conflicting summary judgment evidence regarding (a) whether Green Acres was still entitled to code upgrade coverage; (b) whether the metal roofs had suffered covered damage; (c) whether Green Acres could receive amounts beyond what it had spent on repairs; and (d) whether the job was so complex as to entitle Green Acres to general contractor overhead and profit for AVCO. Docket No. 49 at 7–12.

6–8).  *Id.* at 5.  Finally, the jury found that Brotherhood did not violate Chapter 542 of the Texas Insurance Code (Questions 9–12).  *Id.* at 6–8.

Post-verdict motions followed.  On April 29, 2025, the Court heard oral argument on the motions.

## II. BROTHERHOOD'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Brotherhood seeks a take-nothing judgment as a matter of law.  Docket No. 96. It contends that it complied with the policy by paying Green Acres the replacement cost of all the covered property Green Acres has repaired or replaced.  And to the extent any covered property has not yet been repaired or replaced, Brotherhood owes only the actual cash value, which Green Acres failed to prove at trial.   Brotherhood also contends that there's no evidence of actual damages to support a punitive award for bad faith.  Finally, Brotherhood argues that the jury's answers to Questions 9 and 11 entitle Brotherhood to a take-nothing judgment on Green Acres's Chapter 542 claims.  Docket No. 96.

As explained below, the Court agrees.

### A. Legal Standard

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law.  Judgment as a matter of law is appropriate if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  FED. R. CIV. P. 50(a)(1).  "This will only occur if the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contrary verdict."  *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (citation omitted).  When analyzing a Rule 50 motion, "the court must consider all of

the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir. 1997). But "a mere scintilla of evidence is insufficient to present a question for the jury and there must be a conflict in substantial evidence to create a jury question." *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003) (citation modified). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Johnston v. Ferrellgas, Inc.*, 96 F.4th 852, 857 (5th Cir. 2024) (quoting *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000)). "Federal courts apply state substantive law in diversity jurisdiction cases, but apply federal procedural law." *DP Sols.*, 353 F.3d at 427 (citing *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003)).

### B. Breach of Contract

Brotherhood first argues that there is no evidence to support the finding in Question 1 that Brotherhood breached the policy or to support the $4.8 million damage award in Question 2. Green Acres argues that Brotherhood waived these arguments and that, in any event, it satisfied its evidentiary burden.

### 1.

A plaintiff asserting breach of contract under Texas law must prove "that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform

or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). It was thus Green Acres's burden to prove that Brotherhood breached the policy by failing to pay benefits to which Green Acres was entitled. *See Will v. USAA Gen. Indem. Co.*, 2023 WL 8459498, at *4 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) ("[A] central element to be proven in an action for the alleged breach of an insurance contract is that the insured has been damaged by the breach and the amount of damages resulting from that breach." (citation omitted)); *Smith v. State Farm Lloyds, Inc.*, 2024 WL 1257483, at *8 (E.D. Tex. Mar. 25, 2024); *cf. Underwood v. Allstate Fire & Cas. Ins. Co.*, 2017 WL 4466451, at *3 (N.D. Tex. Sept. 19, 2017) (holding that the insured has the "burden to allocate the damage by proving some particular instance of damage that [the insurer] did not pay for and the proving that those instances resulted from a peril covered by the Policy"); *GeoVera Specialty Ins. Co. v. Walker*, 2021 WL 5351721, at *3 (S.D. Tex. Aug. 9, 2021) (noting that the insured bears "the burden of proving the extent of the loss" (citing *Ayoub v. Chubb Lloyds Ins. Co. of Tex.*, 641 F. App'x 303, 307 (5th Cir. 2016))).

Here, the policy provides that Brotherhood will pay the least of (1) "the amount determined under *Valuation of Property*," (2) "the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable," or (3) the policy limit. DX-120 at 5742. Only the first two clauses are relevant here. The "Valuation of Property" clause (§ 8 of the policy) states that Brotherhood will pay

the "replacement cost" for covered property up to the amount Green Acres actually spent to repair or replace the property "with similar materials":

### VALUATION OF PROPERTY

\*    \*    \*

**Replacement Cost**: When Replacement Cost (RC) is shown on the declarations for covered property, the value is based on replacement cost without any deduction for depreciation.

This replacement cost provision does not apply to: objects of art, rarity or antiquity; property of others; or paragraphs 2-7 above.

The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount you spend to repair or replace the damaged or destroyed property.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. **You** may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if **you** notify **us** of **your** intent within 180 days after the loss.

*Id.* at 5744. Critically, if Green Acres does not repair or replace the damaged property, Brotherhood does not owe replacement cost. *Id.* In that scenario, Green Acres may "make a claim for the actual cash value" of the damaged property. *Id.*; *see also Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, 2014 WL 4796967, at \*5 (N.D. Tex. Sept. 26, 2014) (interpreting similar contractual language to mean the insured may recover replacement cost only "once [the insured] has repaired or replaced the lost or damaged property"). The "Like Kind and Quality" clause allows Green Acres to recover the cost of repairing or replacing the damaged property "with material of like kind and quality to the extent practicable." DX-120 at 5742.

The first problem for Green Acres is that it has not repaired or replaced any property for which Brotherhood has not already paid the replacement cost—which means Green Acres is not entitled to any additional replacement cost under the terms of the policy.  In fact, the evidence at trial established that Brotherhood paid more than $3.1 million to repair or replace various damaged property pursuant to the parties' March 7, 2022 agreed scope of work.  *See* DX-55; *see also, e.g.*, DX-70 (invoice for repairs to the Worship Center); DX-73 (invoice for repairs to the Family Life Center); DX-85 (invoice for repairs to the Student Center).  And both Bruce Webster, AVCO's representative, and Eddy Espinosa, Green Acres's corporate representative, testified that AVCO completed all the repairs in the scope of work (except for the "steep slopes" of the Family Life Center roof), Brotherhood paid all the invoices, and Green Acres owed AVCO nothing more:

- Webster and Espinosa testified that AVCO completed the work described in the March 2022 agreement and sent invoices to Brotherhood and that Brotherhood paid the invoices in full.  *See* Trial Tr. 2/188–89, 238; DX-64–66, 69–76, 84–90, 99–100, 106–09, 111–14 (invoices for each completed phase of work).

- Webster stated that "everything is completed [in the agreed scope] except for the steep slopes on the FLC."  Trial Tr. 2/230:22–24, 234:11–14.

- When pressed on whether any building besides the sloped portion of the Family Life Center remained unrepaired, Espinosa corroborated Webster's testimony.  *Id.* 194:25 ("Not that I can think of right off the top of my head.").

- When asked whether Green Acres presently owes AVCO anything further for the completed repairs, Espinosa conceded that Green Acres did not.  *Id.* 195–96.

- Espinosa also testified that AVCO is no longer working on the properties.  *Id.*

Regarding the Family Life Center's "steep slopes," the uncontroverted evidence at trial is that they remain unrepaired.  *Id.* 230:22–24, 234:11–14.  Likewise, Green Acres has not repaired or replaced the metal roofs that the parties agreed to carve out of the agreed scope of work.  *See id.* 227:19–25 (Webster asserting that the copper roofing "still needs to be done").  Nor has Green Acres paid (or ever been charged) the general contractor overhead and profit also excluded from the agreed scope.  *Id.* 203:5–12; *see Tolar v. Allstate Tex. Lloyd's Co.*, 772 F. Supp. 2d 825, 831 (N.D. Tex. 2011) (explaining that general contractor overhead and profit is considered a replacement cost under Texas law (citing *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001))).

Because Green Acres has not "repaired or replaced" these additional damaged properties, "[r]eplacement cost valuation does not apply," DX-120 at 5744, and Brotherhood does not owe Green Acres any additional replacement costs.  *See Devonshire Real Est.*, 2014 WL 4796967, at *5; ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 11:35 (6th ed. 2025) (collecting cases) (noting that replacement costs are not due "until the covered amounts *spent* by the insured exceed the actual cash value amount already paid" by the insurer (emphasis added)).

That leaves Green Acres with the actual cash value of any additional damaged property.  And this presents Green Acres's second problem:  It failed to submit evidence of the actual cash value of any unrepaired or unreplaced property.  As for the sloped portion of the Family Life Center roof, the parties disputed the cost of the necessary upgrade after the accident.  Brotherhood claims that it already paid

$68,000 to upgrade the decking, Trial Tr. 2/191:2–10, while Green Acres presented some evidence that the upgrade would cost $580,000, *id.* 235.  But there was no evidence of the actual cash value of the damaged portion of the Family Life Center roof—with or without the upgrade.  And in any event, the evidence at trial showed that Green Acres never submitted a claim for the roof upgrade to Brotherhood or paid to upgrade the roof.  *See id.* 291:20–25 (Brotherhood's representative stating "we have not received a copy of an estimate from either AVCO or the insured's representatives"); DX-120 at 5719 (stating Brotherhood will not spend more on upgrades than "the amount actually spent to repair, rebuild or replace the building"); Trial Tr. 2/290:4–8 (Brotherhood representative stating Brotherhood has not received any information indicating the upgrade has been performed).

As for the metal roofs, although Green Acres presented evidence that these roofs suffered damage, DX-120 at 5736 § 16; PX-28; Trial Tr. 2/105–06; *id.* 69:6–18, Green Acres submitted no evidence of their actual cash value.  Green Acres's roofing expert Thomas Irmiter provided only building-by-building estimates of *replacement cost values*, but he never delineated the value—replacement cost or actual cash—of the metal roofs across the properties.  *See* Trial Tr. 2/112–115.  Green Acres asserts that Irmiter's estimate "considered depreciation," and is therefore some evidence of the actual cash value of the entire property.  Docket No. 107 at 11.  But despite declaring that he considered depreciation, Irmiter never told the jury the value of that depreciation or how it was calculated.  *See* Trial Tr. 2/133–34.  In fact, Irmiter conceded that he did not "have a total summary of the actual cash value" for the

claimed damaged property or "a total depreciation amount that would lead to that actual cash value." *Id.* 134:11–12; *id.* 134:13–16.

Finally, as noted above, the policy also states that Brotherhood will alternatively pay "the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable." DX-120 at 5742. Green Acres did not carry its burden here either. Although there was evidence Green Acres was unsatisfied with some of the work by AVCO, there was no evidence that the materials used by AVCO were not "of like kind and quality," no evidence that Brotherhood required AVCO to use material that was not "of like kind and quality," and no evidence of the amount required to repair or replace any damaged property with "like kind and quality" materials.[3]  In fact, the parties agree that this option of recovery is an "alternative" to recovery under § 8 discussed above.  Docket No. 96 at 5; Docket No. 107 at 8.  And the only evidence presented by Green Acres at trial were estimates of recovery under § 8.  *See* Trial Tr. 112–15 (Irmiter opining on the replacement cost value of each building); *id.* 132:13–17 (noting that Irmiter referred to his estimate as "replacement cost totals"); *id.* 211 (Webster testifying that AVCO's "price" was $5.6 million); *id.* 232 (Webster testifying that AVCO and Brotherhood followed the process set forth in § 8:  "[D]epreciation is owed" after the work is completed.).  Green Acres never presented an estimate tied to this alternative option of recovery.

---

[3]  Green Acres also argues Brotherhood "dictated" that AVCO do "temporary" work or "work that needed to be redone," and that these "temporary" repairs were not of "like kind and quality." Docket No. 107 at 7, 11.  But the evidence showed only that Brotherhood and AVCO reached an agreed scope of work, AVCO did the work in the scope, and Brotherhood paid for it as required by the policy.  There was no evidence of Brotherhood's "dictating" the work performed by AVCO.

There is therefore no evidence to support a finding that Brotherhood breached the policy by failing to pay Green Acres a specific policy benefit to which it is entitled. Nor is there evidence that Green Acres suffered actual damages from any alleged breach, let alone the $4.8 million found by the jury. *See Will*, 2023 WL 8459498, at *4 ("[A] central element to be proven in an action for the alleged breach of an insurance contract is that the insured has been damaged by the breach and the amount of damages resulting from that breach." (citation omitted)); *Smith*, 2024 WL 1257483, at *8.

**2.**

Green Acres argues that Brotherhood waived certain arguments by failing to raise them in a Rule 50(a) motion; that Green Acres presented evidence of either $6.2 million in replacement cost value or, alternatively, $5.6 million; and that Brotherhood had the burden to show the actual cash values at trial. These arguments fail.

First, waiver. Before the case was submitted to the jury, Brotherhood moved orally for judgment as a matter of law under Rule 50(a). Trial Tr. 4/14–22. Specifically, Brotherhood argued that Green Acres's breach of contract claim failed because Brotherhood had already paid for the covered repairs and Green Acres failed to show that it was entitled to anything further. *Id.* Green Acres now argues that Brotherhood failed to include metal roofs or the alternative valuation under the policy's "Like Kind and Quality" provision and has therefore waived these arguments. Docket No. 107 at 5, 11. But Brotherhood did include the metal roofs in its motion. Trial Tr. 4/21:1–10. And in any event, Brotherhood's broad evidentiary argument

15

easily satisfied Rule 50. *See, e.g.*, *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (holding that Rule 50(b) should be "construed liberally" and that the purposes of requiring a Rule 50(a) motion before submission to the jury "are 'to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury'" (quoting *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996))); *see also Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 457 (5th Cir. 2001) ("We decline to adopt an unduly burdensome view of Rule 50 that would require litigants to detail every aspect of a case where, as in this case, a general, all encompassing statement will suffice."); *Johnston v. Char-Broil, LLC*, 622 F. Supp. 3d 317, 323 (N.D. Tex. 2022) (holding that movant's Rule 50(b) arguments were preserved even though they were "more fully fleshed-out articulations" of the arguments raised in the Rule 50(a) motion), *rev'd on other grounds sub nom.*, *Johnston v. Ferrellgas, Inc.*, 96 F.4th 852 (5th Cir. 2024).

Green Acres next argues that Irmiter, its roofing expert, testified that Green Acres suffered damages in the amount of $6,247,460.31, or alternatively, that "the jury heard AVCO's independent damages estimate of $5.6 million." Docket No. 107 at 6. Both figures, however, included estimates for work to repair or replace property that Green Acres has not yet repaired or replaced. *E.g.*, Trial Tr. 2/126, 129, 160; *id.* 211, 227–28. Thus, to the extent these amounts represent a replacement cost valuation, the valuation "does not apply" by the terms of the policy. DX-120 at 5744

("Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced."); *see Lakeside FBBC, LP v. Everest Indem. Ins. Co.*, 612 F. Supp. 3d 667, 677 (W.D. Tex. 2020) ("If Plaintiff has not replaced or repaired the damaged property, under the plain meaning of the contract, it is not yet entitled to replacement cost value."); *Devonshire*, 2014 WL 4796967, at *4–5 (plaintiff was not entitled to a replacement cost valuation because plaintiff had not completed all repairs, even though plaintiff testified that 90% of the repairs were completed). Further, Irmiter conceded that his $6.2 million estimate included amounts for repairs for which Brotherhood had already paid. Trial Tr. 2/140–48 (conceding that some of the items in his estimate "are the actual costs that were paid to AVCO for work that has been completed"). Thus, these figures are not competent evidence of the replacement cost value allegedly owed to Green Acres under the policy. *See Kahlig Enters., Inc. v. Affiliated FM Ins. Co.*, 2023 WL 1141876, at *5 (W.D. Tex. Jan. 30, 2023) (finding that the insured could not apply the replacement cost value amounts it had already received from the insurer to its estimate of damages without receiving "a windfall recovery"), *aff'd*, 2024 WL 1554067 (5th Cir. Apr. 10, 2024).[4]

---

[4] Green Acres also contends that Brotherhood never paid the full actual cash value, thereby preventing Green Acres from making the repairs and entitling it to replacement cost value. *See* Docket No. 107 at 9–10. Under the prevention doctrine, "when a promisor wrongfully prevents a condition from occurring, that condition is excused." *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000). But that doctrine does not apply here for two reasons. First, "no Texas court has employed the doctrine of prevention to vitiate an insured's contractual obligation to repair or replace damaged property before claiming payment for replacement costs." *Kahlig*, 2023 WL 1141876, at *5 (collecting cases). Second, the circumstances in which other jurisdictions have applied the doctrine are not present here. *See Devonshire*, 2014 WL 4796967, at *7 (collecting cases). Indeed, Brotherhood did not deny coverage, *see id.*, but rather paid $3,187,268.34 to Green Acres, with the first $925,744.58 paid just two months after Green Acres filed a claim.

Finally, Green Acres argues that Brotherhood had the burden to prove actual cash value because this is a limitation on liability for which the insurer, not the insured, bears the burden of proof.  Docket No. 107 at 9.  Not so.  The text and structure of the policy indicate that "actual cash value" in § 8 of the "Valuation of Property" clause is a "way to measure damages," not a "limitation of liability."  *See Kahlig*, 2023 WL 1141876, at *5; *Ayoub*, 641 F. App'x at 306.  As noted above, § 8 provides that (1) the insured is entitled to replacement cost after repairing or replacing the damaged property and that (2) the insured may claim actual cash value before repair or replacement.  DX-120 at 5744 § 8.  These establish the ground rules for measuring the covered loss, not limiting the liability of the insurer.  *See Kahlig*, 2024 WL 1554067, at *2–3 (concluding similar policy language was a measure of loss).  And unlike the policies in the cases cited by Green Acres, the policy language here repeatedly puts the responsibility regarding actual cash value on the insured, not the insurer, which further indicates that the provision is not a limitation of liability.  *Contrast Allen v. State Farm Lloyds*, 2017 WL 3275912, at *11–12 (Tex. App.—Dallas Aug. 1, 2017, pet. denied) (policy asserting that before repairs, "*we* will pay only the actual cash value," and after repairs, "*we* will pay the covered additional amount you actually and necessarily spend to repair" (emphases added)), *with* DX-120 at 5744 § 8 ("*You* may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if *you* notify *us* of *your* intent within 180 days after the loss." (emphases modified)).

Finally, the policy's structure here differs notably from the unusual provision at issue in *Ayoub*, the primary case cited by Green Acres. 641 F. App'x at 306–09; *see also id.* at 308 (noting that "[n]o Texas court has addressed a policy provision that is substantially similar in its overall structure and language to this one"). In *Ayoub*, the insurer conceded that every statement leading up to the sentence in question— which itself looked like a measure of loss—was in fact a limitation of liability. *See, e.g., id.* at 306 ("Our *limit of liability* for covered losses . . . is reconstruction of: (1) your dwelling *up to the limit of liability* shown in the declarations page . . . ." (emphases added)). Therefore, it would have been "perplexing" for the provision to begin with limitations (i.e., contractual "carve-outs") and then end with an affirmative measure that the insured would have to prove rather than vice versa. *Id.* at 309 n.3.

But here, the inverse is true. The policy sets forth the limitations in another provision titled "Property Excluded and Limitations," which excludes from coverage animals, headstones, and vehicles, among other things. DX-120 at 5734–36. Meanwhile, § 8 is located in a provision titled "Valuation of Property," *id.* at 5743– 44, "which establishes how losses to the covered property will be valued." *Kahlig*, 2024 WL 1554067, at *2. Each of the provisions leading up to § 8, moreover, defines various measurements of loss. *See, e.g.*, DX-120 at 5744 § 1 (defining actual cash value as "the actual cash value at the time of the loss (with a deduction for depreciation)"); *id.* § 2 ("The value of glass is based on the cost of safety glazing material . . . ."); *id.* § 3 ("The value of merchandise that you have sold but not

19

delivered is based on the selling price less all discounts and unincurred expenses."); *id.* § 7 ("The value of a lost or damaged part of an item . . . is based on the value of only the lost or damaged part or the cost to repair or replace it."). On the same page, § 8 simply informs the insured when it can receive "replacement cost without any deduction for depreciation." *Id.* § 8.

Because actual cash value is not a limitation of liability, establishing it was Green Acres's burden at trial. *See, e.g.*, *Kahlig*, 2024 WL 1154067, at *2–3. And, as noted above, Green Acres failed to do so.

*    *    *

In sum, Green Acres failed to prove that it was entitled to any policy benefits Brotherhood did not already pay. There is therefore no evidence to support the "yes" answer to Question 1 or the $4,838,747.66 in damages found by the jury in answering Question 2. Accordingly, Brotherhood is entitled to judgment as a matter of law on Green Acre's breach of contract claim. *See* FED. R. CIV. P. 50(a)(1); *Abraham*, 708 F.3d at 620 (noting that judgment as a matter of law is appropriate when "the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contrary verdict").

### C. Common Law and Statutory Bad Faith

Brotherhood also seeks a take-nothing judgment on Green Acres's common law bad faith claim (Questions 3–5), Docket No. 96 at 9–22, and Green Acre's claims that Brotherhood committed statutory bad faith under Chapter 541 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA") (Questions 6–8), *id.* at 22–26.

20

Each of these bad faith claims requires that Green Acres prove actual damages. *See Mirelez v. State Farm Lloyds*, 127 F.4th 949, 952 (5th Cir. 2025) (holding that extracontractual bad faith claims fail when "the only actual damages [the insured] asserts are those benefits provided for, *and paid out under,* his insurance policy" (emphasis added) (citations omitted)); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 134–35 (Tex. 2019) (similar); TEX. INS. CODE. § 541.151(1)–(2) (requiring "actual damages" for suits under Chapter 541 and the DTPA); *Vaughan v. Hartford Cas. Ins. Co.*, 277 F. Supp. 2d 682, 690 (N.D. Tex. 2003) (noting that "actual damages are an element of a claim for breach of the duty of good faith and fair dealing" (citation omitted)); *see also* TEX. CIV. PRAC. & REM. CODE § 41.004(a) ("exemplary damages may be awarded only if damages other than nominal damages are awarded"); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 417 (5th Cir. 2009) ("[A]ctual damages sustained from a tort must be proven before punitive damages are available." (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex. 1995))).

But at trial, Green Acres's sole source of actual damages was the allegedly unpaid policy benefits. *See* Docket No. 93 at 10 ("[T]he jury found that Green Acres had a right to benefits under its policy and that Brotherhood Mutual wrongfully withheld the benefits, causing $4,838,747.66 in actual damages."). At oral argument, Green Acres conceded as much, insisting that the unpaid policy benefits "are the actual damages" serving as "the predicate for punitive damages under [§ 41.004(a)], nothing more is required." Docket No. 119. And, as explained in part II.B. above, Green Acres failed to prove that it was entitled to any unpaid policy benefits.

Green Acres's statutory bad faith claims fail for the additional reason that the jury awarded "$0" in damages for these claims. *See* Docket No. 77 at 5.

Accordingly, Brotherhood is entitled to judgment as a matter of law on Green Acres's common law and statutory bad faith claims (Questions 3–8). *See* FED. R. CIV. P. 50(a)(1); *Abraham*, 708 F.3d at 620.

### D. Chapter 542 of the Texas Insurance Code

Finally, Brotherhood seeks judgment as a matter of law on Green Acres's claims under Chapter 542 of the Texas Insurance Code (Question 9–12). Docket No. 96 at 27. Generally, Chapter 542 "imposes procedural requirements and deadlines on insurance companies to promote the prompt payment of insurance claims." *Ortiz*, 589 S.W.3d at 135. The jury found that Brotherhood was not liable for any violation of Chapter 542. Docket No. 77 at 6–7. In addition, because Green Acres failed to prove that Brotherhood owed additional policy benefits as set forth above, Brotherhood is not liable for delayed payments as a matter of law. *See* TEX. INS. CODE § 542.060(a) (providing liability under the subchapter only if the insurer "is liable for a claim under an insurance policy"); *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019) (noting that Prompt Payment Act damages are unavailable if the insurer is not liable for the insurance claim (collecting cases)), *superseded on other grounds by statute*, TEX. INS. CODE § 542A.

Brotherhood is therefore entitled to judgment as a matter of law on the Chapter 542 claims (Questions 9–12). *See* FED. R. CIV. P. 50(a)(1); *Abraham*, 708 F.3d at 620.

*    *    *

In sum, the Court **GRANTS** Brotherhood's renewed motion for judgment as a matter of law.

### III. BROTHERHOOD'S MOTION FOR NEW TRIAL

Under Federal Rule of Civil Procedure 50(c), the Court must also "conditionally rule" on Brotherhood's alternate motion for new trial, Docket No. 97. "A district court can grant a motion for new trial if the first trial was unfair or if the jury verdict was against the great weight of the evidence." *Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005) (citation omitted); *see also* FED. R. CIV. P. 59(a)(1)(A). "The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court." *Foradori v. Harris*, 523 F.3d 477, 503–04 (5th Cir. 2008) (quotation omitted). And a court must base its decision "on its assessment of the fairness of the trial and the reliability of the jury's verdict." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).

As shown above, the Court found that no legally sufficient evidence supported the jury's findings of breach of contract, actual damages, bad faith, or punitive damages. For the same reasons, the Court finds that the jury's verdict as to the contract and bad faith claims is against the great weight of the evidence. *See Cates*, 431 F.3d at 460; *Shows v. Jamison Bedding Inc.*, 671 F.2d 927, 931 (5th Cir. 1982) (noting that the great-weight-of-the-evidence standard is lower than the standard for a judgment notwithstanding the verdict (citation omitted)).

Accordingly, the Court **CONDITIONALLY GRANTS** Brotherhood's motion for new trial on Green Acres's contract and common law and statutory bad faith claims.

## IV. CONCLUSION

For the foregoing reasons, Brotherhood's renewed motion for judgment as a matter of law is **GRANTED** (Docket No. 96), and Brotherhood's alternate motion for new trial is **CONDITIONALLY GRANTED** (Docket No. 97). The Court **DENIES** as moot all other post-trial motions (Docket Nos. 71; 90; 94; 95).

So **ORDERED** and **SIGNED** this **3rd** day of **July, 2025.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE